## Richmond.

### THOMAS SHARF V. COMMÒNWEALTH.

March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. INTOXICATING LIQUORS—*Storing for Sale—Evidence Consistent with Personal Use—Instructions—Case at Bar.*—On a prosecution for storing liquor for sale it was not error to refuse an instruction that if the jury believe from the evidence that the possession of the liquor was equally consistent with a personal use by the accused as a purpose to sell the same, then they will find the accused not guilty.  The instruction assumed that the Commonwealth relied entirely upon the possession to prove that the accused  possessed it for the purpose of sale, which was not true, and was therefore calculated to mislead the jury.  Admitting that the naked possession was equally consistent with a personal use as with a purpose to sell, there were other incriminating facts and circumstances shown in the evidence which might satisfy the jury that the possession was for purposes of sale.

2. INTOXICATING LIQUORS—*Storing for Sale—Possession—Evidence Sufficient to Support Verdict of Guilty.*—In the instant case, a prosecution for storing liquor for sale, it was insisted that the presumption of guilt arising from the possession of ardent spirits was fully rebutted by testimony for the accused to the effect that the liquor was for his personal use.  While this might be true, if the Commonwealth had introduced no other evidence than the possession of the liquor, it is not true in the instant case where the Commonwealth, in addition to proof of possession, showed many incriminating facts and circumstances.

3. INTOXICATING LIQUORS—*Storing for Sale—Presumption from Possession.*—The *prima facie* presumption of guilt, arising from the possession of more than .one gallon of whiskey in the accused's home, is sufficient to support a verdict of guilty, unless the character of the rebuttal testimony is such as to at least raise a reasonable doubt in the minds of a fair and impartial jury that the possession of the whiskey was for the purpose of sale.

Error to a judgment of the Circuit Court of Elizabeth City county.

*Affirmed.*

The opinion states the case.

*John H. Bowen* and *J. Winston Read*, for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General*, and *Lewis H. Machen, Assistant Attorney-General*, for the Commonwealth.

WEST, J., delivered the opinion of the court.

Thomas Sharf complains of a judgment sentencing him to serve three months at hard labor on the State convict road force, and to pay a fine of $200.00, for a violation of the prohibition law (Acts 1918, chapter 388).

The indictment was in the "omnibus" form, authorized by the prohibition act. The attorney for the Commonwealth elected to try the accused for storing for sale and attempting to manufacture ardent spirits. The jury convicted him of storing for sale and found him not guilty of manufacturing ardent spirits.

Sharf was a merchant in Hampton, his store being located about two blocks from his residence. The officers saw him and his wife at the store and informed them they were going to search their residence. They offered no objection, saying the house was open, but neither one would accompany them to make the search. The officers found the house open but saw no one on the premises. They found a one gallon glass jug full of corn whiskey and a small funnel in the accused's bedroom, and a one gallon jug about half full of corn whiskey in his wardrobe. They also found two empty gallon jugs in the closet under the stairway which smelled of whiskey, and in an enclosure on the back porch they found half a crate of empty pint bottles. There was a smoul-

dering coal fire in the cook stove and a mixture called "home brew" was simmering in a five gallon pan on the stove. A twenty gallon keg was found in the back yard, in the bottom of which was about one-half inch of a mixture of corn meal, cracked corn and rye grain, which the witnesses called "mash."

According to the testimony of the accused's wife, her husband had been sick for five years and bought the whiskey to be used under the advice of his physician, as a medicine and not to sell. She further testified that there was no fire in the stove when she left home about seven o'clock that morning and that she had not been back home all day. She said the mixture the officers found on the stove was water and washing powder which had been used for washing towels and that the mixture in the keg in the back yard was chicken feed. The son of the accused corroborated the statement of his mother that his father had the whiskey for his personal use and drank regularly. The accused, testifying in his own behalf, stated that he bought the whiskey for his personal use, that he never sold any whiskey and did not have it for the purpose of sale. On cross-examination he said he bought it from a short, dark man, who brought it to his door, but he did not know his name. He claimed the empty bottles on the back porch were left there by the expressman, and were used by him to sell cider in at his store. Accused proved by two witnesses that his general reputation was very good.

Upon the trial the court gave the jury the following instructions:

"A. The court instructs the jury that if they believe from the evidence that the accused had the liquor in his *bona fide* home for his personal use, then they will find the accused not guilty.

"B. The court instructs the jury that the law pre-

sumes the accused to be innocent until he is proven guilty beyond a reasonable doubt, and if there is upon the minds of the jury any reasonable doubt of the guilt of the accused, the law makes it their duty to acquit him, and that mere suspicion or probability of his guilt, however strong, is not sufficient to convict, nor is it sufficient if the greater weight or preponderance of evidence supports the charge in the indictment, but to warrant his conviction his guilt must be proved so clearly that there is no reasonable theory, consistent with the evidence, upon which he can be innocent.

"C. The court instructs the jury that notwithstanding the fact that the possession of more than .one gallon of distilled liquor by the accused was *prima facie* evidence that he possessed same for the purpose of sale, nevertheless this does not shift the burden of proof, and under the evidence in this case the burden is still on the Commonwealth to establish the guilt of the accused beyond all reasonable doubt."

[1] The accused alleges that the court erred in refusing to give instruction "D" requested by him, which was in these words:

"The court instructs the jury that if they believe from the evidence that the possession of the liquor was equally consistent with a personal use by the accused as a purpose to sell the same, then they will find the accused not guilty."

This instruction assumes that the Commonwealth relied entirely upon the possession of the liquor to prove that the accused possessed it for the purpose of sale, which is not true, and was therefore calculated to mislead the jury. Admitting that the naked possession was equally consistent with a personal use as with a purpose to sell, there were other incriminating facts and circumstances shown in evidence which might satisfy the jury that possession was for the purpose of sale.

The jury were sufficiently informed as to the law applicable to the case by the instructions granted, and the court did not err in refusing to give instruction "D."

[2] The second and last assignment of error challenges the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

It is insisted that the only evidence of the guilt of the accused is the *prima facie* presumption of guilt arising under sections 28 and 65 of the prohibition law from the possession of more than one gallon of ardent spirits in the home of the accused.    It is contended that this presumption is fully rebutted by the evidence by and on behalf of the accused to the effect that the liquor was purchased for the personal use of the accused, and that he had never at any time sold any liquor to any one; and that the jury was not justified in disregarding this evidence for the accused.   This might be true if the Commonwealth had introduced no other evidence than that showing the possession of the whiskey, provided the jury believed such rebutting evidence to be true.

But the Commonwealth, in addition to proof of possession, showed many incriminating facts and circumstances.   The accused admitted that he had been buying whiskey for some time from a bootlegger, and that he had a half crate of empty pint bottles in the pantry on his back porch.   He offered no explanation of the small funnel and empty jugs containing the odor of whiskey, found on the premises.   The wife of the accused testified that there was no fire in the cook stove when she left the house about seven o'clock in the morning, and that she did not return until after the search, yet it is not denied that the officers found fire in the cook stove and a mixture they called "home-brew" simmering in a vessel on the stove, at five o'clock in the afternoon.

[3] The *prima facie* presumption of guilt, arising from the possession of more than one gallon of whiskey in the accused's home, was sufficient to support the verdict of guilty, unless the character of the rebuttal testimony was such as to at least raise a reasonable doubt in the minds of a fair and impartial jury that the possession of the whiskey was for the purpose of sale. There is no suggestion that the members of the jury were prejudiced against the accused. They heard the witnesses testify and observed their demeanor on the witness stand, and were convinced beyond a reasonable doubt that the accused was guilty. The learned judge who presided at the trial, after hearing the testimony of the witnesses and likewise observing their demeanor on the witness stand, approved their verdict.

Under these circumstances, and in view of the evidence, we cannot say the verdict is plainly wrong or without evidence to support it.

*Affirmed.*